We'll go ahead and get started. Our first one is case number 25-20002 and it's U.S. v. Kuyoro and we're going to hear Loretta Barry. May I please support Loretta Barry for the United States. The United States indicted Kuyoro for FEMA fraud after she applied for and received $33,000 in Hurricane Harvey relief funds on a property that never existed, on a property that she reported to FEMA was demolished the day before the alleged inspection that she purportedly attended in person and where every single document that she sent to FEMA was fake. The district court failed to conduct a fulsome rule 16 materiality analysis, a Swenson Brady analysis or examined the Garrett factors on this record. The court abused its discretion. I understand that you disagree with what the district court did but because it's a dismissal without prejudice, why are you here? Why don't you just refile it and go after Kuyoro? Because your honor that sets an absolutely terrible precedent. Dismissal is an extreme sanction. Anytime that sanction happens the Supreme Court has been very clear that a dismissal of an indictment whether with prejudice or without there must be a finding of prejudice and what that means in this context prejudice dismissing an indictment for a discovery violation means that the defendant would not have been able to use the information effectively at trial and here the recoupment letters and the email from the alleged inspector were known pieces of information to this defendant and I say that with respect to the recoupment letters. Suppose there's there's reputational injury as well a Brady finding. Absolutely your honor and these were very accomplished prosecutors who had an unblemished reputation who were rebuked. Could there be a statute of limitations consequences or not? Absolutely not your honor. I briefed that in in the first couple pages of my brief the statutes that apply that would allow for reinstatement of the indictment. So there is but you'd probably be here arguing even if they'd done lesser sanctions let's and I'm not even clear what the ascending order of sanctions are. Retrial mistrial any of those would sort of put you in the same position but you'd be up here. Absolutely and here's why because the court in Swenson in that opinion the court was this court was very clear that it can't be an implied. But Swenson was a dismissal with prejudice. Correct but Swenson also relied on McKinney which was a dismissal without prejudice and in Swenson the court stated. McKinney is the exclusion of witnesses as a sanction or is it a dismissal without prejudice? One of them is exclusion of witnesses. Correct that was the McKinney case it was a dismissal without prejudice your honor. I thought it was just excluding witnesses that 17 of them which would be essentially a functional equivalent of a evidentiary bar to re-prosecution that would be in my mind. Okay well. Maybe I'm wrong. What about at the beginning here's I mean if we accept the framework the district court imposed. I think I'm correct and I can't pronounce her name but Glass-Schroeder. Yes. The theory of the prosecution elicited primarily from her was you can't inspect something that doesn't exist what you just said. Correct. But let's imagine the government knew there was an inspector therefore an inspection had happened. In other words when the defense starts in its opening it says I've got four points to make it's like three page long opening and three of the four related to the mystery inspector. So if the government's saying there's no inspection or if there was an inspection the inspector was colluding and the defense is saying my whole defense is that the inspector verified but throughout the government knows there actually was an inspector. Isn't that getting close to material and favorable to the defense? No your honor because the defendant himself knows there's an inspector. Okay so that's my thought you're am I correct that your position is that first prong of Brady it's site S-I-P-E. Yes. They had a reasonable opportunity. Yes and not just that your honor here is is why we know that they used this information defensively and then as an offensive tactic. If the court will bear with me and we'll just go through the brief chronology of that. It's good to tell me that because I interrupt you. Okay go ahead I'll bear with you. Thank you your honor I'll be brief. Four months before trial on our witness list this inspector was not on the witness list. Then at record 1028 AFPD Austin admits to the court at the May hearing that he called the prosecutor and said hey I think you have a problem this inspector is not on the witness list. Then an opening statement the entire defense argument was this. They told the jury you're going to hear that this inspector toured room by room with Kiora. You're going to hear that he examined her identification. You're going to hear that he took pictures but you're not going to hear from him and that's what continued with the trial. Then after we rebutted in just four statements of did you make any effort to contact the inspector and the agent says no. Then in May at the May hearing AFPD Austin states that he tried to google the inspector. He tells the court that and he tries to go through FEMA. Now how could he have done that? Would he did he just google it with the inspector ID or did he ask his own client who obviously had met with this inspector that that's their theory to the jury. If this if her client. But let's say hypothetically I mean it is a government contractor. The inspector was FEMA's contractor. Let's say in fact the inspector exists and the inspector had photographs of a damaged property. If the government hadn't turned that over that would be braided correct? So they in other words the government wouldn't have been able to argue never an inspection. If there really were photos of a damaged property and the government didn't turn that over that would be Brady yes? If the government well let me say that if the government turned it over during the investigation it would not be Brady. The test becomes Swenson which is prejudice. So no but I'm saying I'm imagining it all comes to light as it did here. Special Agent Johnson's on the stand and he says actually you know what I did email. It wouldn't have been Brady but it would have been a violation of the United States policy which is even broader than Brady. And that's what the prosecutor stated. She said that and this and our policy is broader and more expansive than what Brady requires or what rule 16 requires. We would have turned it over absolutely. But Brady itself materiality we would have turned that over. Okay these are part of these what you're saying is relevant to their arguments part isn't. Because would you agree with me Special Agent Johnson writing an email even if it goes unanswered that's jinx. That's 26.2. But you complied with jinx and they aren't saying you didn't because it became apparent. So I'm a little perplexed at the approach they have here. But it's not you said rule 16. Why would it be rule 16 if that's investigative effort by the government which is excluded from rule 16? Rule 16 requests that any information that is material or that would have perhaps. But it then excludes investigative material and isn't an email to a prospective witness investigative effort? And we did turn all over all those over. Yes so had we known about it we would have turned it over. Yes your honor. And then you did in the middle of trial. Correct. Okay. Correct and getting back to my context of inspector was known to the defense. I'd like to point out that record 1054 at the November hearing. Now we have a different AFPD telling that AFPD Melby representing to the district court that they had asked for information about this inspector referencing a very detailed five-page discovery letter. And I understand that the federal public defender has attempted to supplement the with that five-page letter. I would like to point the court to page two where that record asked where that page and the request asked for arrest information for the alleged sex trafficking male defendant. Which is not this case and no information about the inspector was asked in those five pages. Now even in cases of egregious contumacious harm this court has emphatically held that the Garrett factors must be examined on the record. Can't just be implied. And I just want to keep it straight what the government's argument is here. Because I don't see us getting to the Garrett factors if there is no Brady. You're asking us to say no Brady. Correct. So I admit the remedy world is is an interesting one. Garrett, Sarsenelli. Is it just dismissals with prejudice or not? I think you're saying it's any dismissal. Correct. But you're trying to tell us at the beginning there's no Brady error. Is there no Brady error because you actually turned it over and therefore Brady's a trial right end of story? Or is there primarily are you asking us to write a decision that says no Brady error because of scythe they had access to it? I'm saying no Brady error but if the court disagrees with me then you have to get to the remedy. Yes I agree. But if if no Brady error why? Because there couldn't be since they got it at trial or because they had reasonable access to this same item. Because the standard for Brady error is prejudice and what that means in Swenson is that could they have effectively used it at trial. Okay but I'm just going to interrupt you there. I have difficulty assessing prejudice and materiality when we never got to a verdict. Usually you assess reasonable probability and prejudice based on a verdict but we the judge never let the verdict. So how do we know if it was material or not prejudicial or not since we never got a verdict? Well you know all of the evidence the defense never put on a defense. So what we have is just the government's overwhelming evidence of inculpatory evidence. So this inspector simply would have been cumulative of the inspection report that was fake. Okay but but their claim is that you hid an inspector that fully validated their defense. They have a document that says someone inspected checked her driver's license and confirmed there was hurricane damage. So if the guy would have if the guy exists and would have said that that would be the whole defense case. Well your honor again I go back to the fact that their entire defense was that she was with this inspector during that inspection. But what if he'd say yes? What if he exists and he would say she was with him? Well that is their obligation under site to access. Okay so but that's where your primary argument is that one. They had access to this person. Yes. And am I right they had access to it because on the inspection report it listed the FEMA number? It listed the FEMA number and also the inspector apparently examined her Texas driver's license when she was in his presence. Yeah. I might add that there exists no Texas driver's license. There's only a Chicago driver's license from a 2018 bankruptcy petition showing that she never even lived in Houston during this time. And she never suffered a natural disaster and she had did not have two dependents as she put in her application for FEMA. Under Nova Scotia and Hastings getting to the collective sanction which is exactly what happened here. The court did not perform the analysis. The court imposed a predetermined sanction that was greater than rule 16 in Brady. The court said in Olivares Calderon that any violations of the government in his court would result in sanctions and that is without evaluating rule 16, without evaluating prejudice under the independent facts of this case, the court simply exceeded its supervisory authority in violation of Nova Scotia and Hastings. 16 has its own remedy clause at the end, right? It lists what judges are supposed to do if there's a rule 16 violation. Yes, I believe so. I can't remember if it has dismissal because I think 26.2 says strike it or mistrial. It doesn't matter. But I guess I'm resisting sanction. I'm resisting getting the remedies which I think is a confusing area because a dismissal without prejudice as Judge Haines inquired at the beginning is sort of just a retrial. Well, let me just quickly tell you what I believe the practical effect is, Your Honor. The practical effect is the standard that the court has created, is that any information that the government has in years-long investigations that take place, whether it results in a dead end or not, whether it's useful or not, any piece of information that the government has under Judge Bennett's standard that's not turned over and the defense just conclusory or speculatively says, oh, well, we could have used that to use a different defense tactic, that automatically comes Brady. And that is a horrible precedent. Well, but the Brady is an affirmative duty, and you don't deny anything your agents have is imputed to the prosecutor. I do not, but well, I understand that it is in our possession if our agents have it, yes. And then why did the trial prosecutor say, yes, it was error, and then a second time say, yep, it's our mistake? Okay, the reason that the prosecutor did that is given the fact that just 10 days prior in Olivares Calderon, the court had issued this warning to the office stating that any any missteps by the government would result in sanctions. With that in her mind, just 10 days prior, trying to recall spontaneously out of 11,000 pages of discovery documents, this wasn't a concession, Your Honor. Under the temperature of the courtroom, it was more an apology, Your Honor. And then the court reserves judgment, and then it's re-argued, and at that point the government says this isn't Brady, right? The night after the issue arose, we filed a response saying it wasn't Brady. Then within our time limit, we filed a motion for reconsideration, yes, Your Honor. And then six months later, the court issued its order. May I reserve rebuttal? Okay, yes, you left time for rebuttal, so we will now hear from Victoria Garcia-Cross for Cairo, Cairo, Cairo. May it please the court. Victoria Garcia-Cross on behalf of Sade Criollo. The district court did not reversibly err in dismissing this indictment without prejudice based on Rule 16 and Brady violation. But it didn't actually rule based on 16 and Brady. It ruled based on its supervisory powers, citing Zarate and Ornelas, right? Your Honor, it did rely on its supervisory powers. You haven't said that that's a basis. You're telling us instead today it's Rule 16 and Brady. Your Honor, the court referenced Rule 16, Brady, and its supervisory powers. But you haven't, in your brief, defended the ruling based on supervisory power, the pattern of cases that seem to be disturbing the district judge. We do rely on that, and apologies if it was unclear in the briefing, but we are. Do you cite Zarate or Ornelas in the brief? We cite the cases that the government referenced. Swenson. Right. Those are remedy cases. Yes, Your Honor. But I guess I would have thought district judges have independent dismissal authority based on supervisory power. That's not Brady and Rule 16, and I'm pretty careful with the brief. I think you've briefed this as a Brady Rule 16 case. Your Honor, our main point is that this would have been an appropriate, the court, of course, can affirm based on any reason that's supported by the record. And you're not making a Jencks argument. No, Your Honor. But this email is classic Jencks material. It's created by a witness who testifies, but you're not saying there was a Jencks error. No, Your Honor, because as Your Honor acknowledged, Jencks just requires the government to hand over material. But doesn't Brady also, isn't Brady a trial right? If they get it to you, you could say, listen, I need a recess. But what you can't say is there's a Brady violation, because you got it during trial. Your Honor, the question for mid-trial disclosures hinges on whether there was prejudice to the defendant. And as the government correctly stated, that this court has interpreted prejudice in that context to mean when the defendant isn't able to use the information effectively. I know, but you got it on in the middle of direct. So all your counsel had to say was, judge, I'll be prejudiced if I have to cross now. We need a continuance. And they didn't ask for that. Your Honor, if I could take a step back. Okay. The district court in this case found there was prejudice. And so the question for this court is not really whether that's right or wrong. The question is whether the district court clearly erred in making that finding. But the problem is how can you find prejudice in what was essentially a non-response to a government email? How could there be any prejudice, favorability, materiality? How do we know whether the person even exists they didn't answer? Well, a few points in response. There are a few types of evidence that are at issue here. So I think that's important to clarify. There was the non-disclosure of the recoupment letters, the letters that showed that FEMA asked for money back. Okay. You're right. I haven't seen as much prejudice in those, but fine. And so that's one kind of bucket of evidence. And then the other category is the information about this inspector. And that's both the identifying information about the inspector. But you had identifying information. You knew the FEMA number. So all it would have required, and this person does seem like the centerpiece of your defense. That's my instinct. The government's made arguments that it isn't. But if you have the FEMA inspection number, all you need to do is ask for a trial subpoena. We want FEMA inspector number so and so. Your Honor, we did not have identifying information. No, but you had the inspector number. Yes, Your Honor. Just ask for that. And again, the district court held that this, the government's lack of, the fact that the government didn't provide more information deprived the defendant of being able to identify the inspector. But I'm questioning the validity of that. If you've got a FEMA inspection number that identifies a specific person, what's the impediment to the defendant to say, trial subpoena, we need this person? Because, Your Honor, we didn't know anything about this inspector. The number was a series of digits. Okay, we're going around circles because if that's an identifying number, and she, she has her whole position at trial was, I gave this person my driver's license. And the defense counsel who represented Ms. Kiora at the trial level said that she had made, he had made attempts to contact, to identify the inspector. So why not ask for a trial subpoena? Your Honor, the issue is that this was disclosed far too late for us to be able to do anything with that information. This was at the end of trial. Okay, I'm going to question that because her defense, I mean, I read the opening and the whole, you, you know, there was a closing, but the whole defense was everything is the inspector. We, our position is we've got a report that an inspector verified the damage, so the government owed us the money. That was the, correct me if I'm wrong, that was the whole defense? Yes, Your Honor. Okay, so? So this would have been much more powerful if she had been able to present the What was the impediment to letting her subpoena the inspector? She didn't have any information. The defense counsel testified, excuse me, explained that he had tried to investigate online and he had tried to go through FEMA's, but he said, we don't exactly know what that entails, but he had had that information. He made an attempt to identify the inspector and he wasn't able to. The district court said that it believed that the government's nondisclosure prevented defense counsel from being able to identify the inspector. Go ahead. No, no, no. I just want to say something, which is, I appreciate that you feel like you need to make arguments, but what I'm wondering is, and this isn't typical in a case, if we rule in your favor, okay, one thing, if we rule in your opponent's favor, same thing. The likelihood is that Kiyoro is going to be replaced and we'll have another trial. So why does it even matter whether you win or lose? Your Honor, it's true that the remedy that the district court imposed allows the government to reindict, and that supports our argument here today. The question, why does it matter? It's because the district court made this finding. It wasn't erroneous on the law or clearly erroneous on the facts, and so we're defending the ruling today. I mean, I appreciate that you're defending the district judge, but again, like I said, if we rule in your favor, okay, I know you'd like that, but if we ruled against you, wouldn't the same exact thing come out? Because if the government had simply accepted what the district judge said, they could have filed again and gone into trial again, and that could happen, or now it could happen if we rule for them. So I'm just a little bit confused about why you even really have much to say. Well, that's certainly true, Your Honor, that the government is free to reindict Ms. Kiyoro. That goes to the appropriateness of the remedy. The government has argued that this was an extreme remedy and suggested that the district court abused its discretion in dismissing this without prejudice, but as Your Honor has stated, they're perhaps inconvenienced by this remedy, but they're welcome to continue with the prosecution, and that shows the reasonableness of district court's decision. What is your position on remedy? Do the Sarcinelli-Garrett factors apply to a dismissal without prejudice or not? They do based on a dismissal without prejudice that's premised on supervisory powers, yes, Your Honor. So let's go back to that. In an earlier exchange, you said that you did defend that in your brief. Yes, Your Honor. Supervisory where? It's on the final portion of our brief where we're explaining that the district court properly reviewed the Garrett factors. I see Brady discussion. I see Rule 16 discussion. I don't see what you're referring to. Your Honor, like I said in the beginning, this court can affirm based on any basis. I understand that. That is true, but you made a specific representation to our court, so I want to make sure it's correct. Yes, Your Honor. Thank you. And if the court will give me a moment, I'll direct the court. While you're looking, if you don't mind, I'll just add to that. The reason it's sort of important is when I re-read the record, the judge here kept saying I wouldn't have imposed this remedy, would not have just because of the Brady in this case. I'm only doing it because of the two others. It's a pattern I'm seeing from this U.S. Attorney's Office. So that's why it seemed to me he was predicating his ruling solely on supervisory power, not on Brady 16 in your brief, but you're looking for it to answer Judge Ho's question. I too don't remember any defense of supervisory power based on a pattern, but keep looking because he's asking you a question. Yes, it's starting at page 40 of our brief, Your Honor. Page 40. And so we've explained in our brief, and I'll explain today as well, that the district court, while it perhaps didn't kind of scientifically enumerate the Garrett factors that were It did explain its reasoning, and its reasoning satisfies the Garrett factors, and this court has explained that that's sufficient. The court expressed the understanding that the district court relied on the pattern of misconduct by Houston prosecutors in coming to its conclusion. The district court did reference that as a factor, but it did not say that it would not have dismissed this case absent those background circumstances. It said it was considering those. So you're talking about Section 1D of your brief. Yes, Your Honor. Section 1 is entirely about Brady and Rule 16. Your Honor, when exercising supervisory powers, the court can dismiss a case, and it can do so based on violations that it's identified, including Rule 16 and Brady violations. It's your point that by signing Garrett and Swenson, you've implicitly argued. Yes, Your Honor. And so turning to the question of materiality, which is overlapping with the question of prejudice, the government has suggested that this information, both the recruitment letters and the inspector information, wasn't material. That's not the case. The district court found that if the government had, excuse me, that the government's non-disclosures prevented the defendant from being able to identify the inspector and from being able to use that information on cross, there was no clear error in that conclusion. For the recoupment letters, Ms. Kuyaruk? Yes, Your Honor. Did the defendant anywhere in this trial record say, here's how I'm prejudiced? What you just said, oh, this impedes my ability to cross Special Agent Johnson. Repeatedly, Your Honor. After the recoupment letters were disclosed, and I also want to kind of go over the chronology. I think that would be helpful. Well, what most helpful is where there was a proffer by the defense attorney, we are prejudiced from cross-examining Special Agent Johnson because we lacked this contact information. Yes, Your Honor. They said that? They said both, after both non-disclosures. So after the recoupment letters, it was revealed that the government hadn't disclosed those recoupment letters from FEMA. Defense counsel said, this is a big surprise. I'm hampered in my cross-examination. I just crossed the last witness based on the understanding that FEMA had not requested their money back. This court didn't say Brady violation then, said I'm going to let it go? Yes, Your Honor. Let me get to the next one. Yes. And where, what's the prejudice? Just tell me right now, what would be the cross-examination question you would have asked Special Agent Johnson that you couldn't? Because it's a deadly, that's what this is. He was not able to reach somebody. So what's, I guess, do you have any Brady materiality case that says it's material, if the government doesn't turn over, that they were unable to reach somebody? Not that they were unable to reach someone specifically, but it is very clear based on Brady case law that if the defendant is hampered in their ability to impeach and hampered in their ability to attack the thoroughness of an investigation, that's Brady. So the cross-question is, Special Agent, did you try to reach the inspector? Yes. Did the inspector respond? No. Well, that was essentially the cross that was asked. What we would have been able to do if we knew that he had this extra information and he had made just one attempt to reach the inspector, we could have said, Agent, you had this person's name, you had this person's email, you had this person's phone number, you made no attempt to go talk to this person, you made no attempt to figure out what happened, who was involved. But he would have said I did make an attempt. They didn't respond. He would have said he made one attempt and sent one email. And that's, okay. But then you would also say defense was the only person that ever met this person, the defendant. It's the only person that ever met him. The defendant had his inspector number. Well, and of course, the argument... We got over that, yeah. From the defense side, the argument would have been... Could you distinguish Syphe? Excuse me? Could you distinguish the Syphe decision that you heard me asking? Are you familiar with it? Yes, Your Honor. And actually, I think Syphe supports our argument. In Syphe, the court found that certain information that had been withheld from the defendant was Brady material, in particular. So that case was a case that involved, as the court is likely familiar, a case that involved allegations of excessive force by a Border Patrol officer. And so in that case, the withheld material involved... It was a number of things, but one of the withheld items was information that the government had provided immigration benefits to one of the witnesses, several of the witnesses. The court found that was Brady material because... I'm talking about the third item. The government denies it suppressed Rodriguez's statements because Rodriguez was known to Syphe, and he had every opportunity to obtain her statement and send her as a witness. Yes, Your Honor. So it found... There were a few different witnesses... Right, but that one, where the court said, no Brady violation. Yes. Because you knew who this person was, you could have asked for a trial subpoena. And the court was very careful in its analysis. It said, you knew who that person was because they were a co-worker, and apparently you were close with them. It distinguished that from another co-worker whose statements were suppressed, who apparently... They apparently didn't get along. And it said, even though you knew this person, even though you had contact with them, the fact that there wasn't proof of a closed relationship meant that the defendant could not have exercised reasonable diligence to acquire this information. It's the same here, but to an even greater degree. Just because Ms. Cuioro met this person once doesn't mean that she, four years later, could have exercised reasonable diligence to be able to find this person, interview them, and use the material... If there were a violation, why wouldn't it be harmless based on the owner of the property listed, who took the stand and said there was no damage, there is no apartment C, the defendant has never lived here, and no inspector came. There was no cross and nothing about this email, I can understand, would have affected that. The district court found that it did hamper the defendant's case. But how? How if she didn't ever live at that and there was no apartment C? The court seems to be suggesting that because the evidence was overwhelming, that... Well, I'm really looking at the defense cross of the owner, and it wasn't, oh yeah, we did live there, we were there, there is an apartment C, there was damage. To my memory, there was virtually no cross of that witness. Yes, Your Honor, I think it's important to emphasize that to prove Ms. Cuioro guilty, the government didn't just have to show that there was false information in this FEMA application, it had to show that she knowingly, she knowingly put that false information there, and also that that false information was material, so it was something that FEMA relied upon in issuing the funds. And so the government certainly presented evidence that the information in the FEMA application was false, some evidence supporting that element, but the circumstantial evidence that the government presented was weak on certain points, and in particular on the materiality point, because as I said, the government had to show FEMA relied on this information, the only witness that they presented to show FEMA's reliance was Pamela Glassroeder, the FEMA witness, her statement suggested that actually FEMA may not have relied on Ms. Cuioro's application, she testified that when FEMA was deciding its funds, what funds it would distribute, it relied on the inspection report, and she said that repeatedly, she said it at row 767, at 793, they relied on the report. But on redirection intimated, one of the only conclusions would be that there was collusion between this inspector and your client. Well, Your Honor. So, I mean, but if that's the testimony, it would make sense why you wouldn't want to call the person. To the contrary, Your Honor, this court has said that it's Brady material if evidence that was withheld would allow the defense to be able to kind of pin the blame on somebody else and identify another suspect. So in the evidence equally would have incriminated her further. In other words, how do we know there's anything favorable here or anything material, rather than even more incriminating, and she was just delighted the inspector didn't show up. Well, I'll direct the court to SIPE. Again, there the court looked at evidence that a particular witness didn't like the defendant because they were abusive to undocumented people. The government said that that was just inculpatory, so there was no exculpatory value to that statement. This court disagreed. It said the defendant could have used that kind of, that information that could have been seen as inculpatory in an exculpatory way. They could have impeached the witness based on that statement and that the defense should be the one to decide whether to risk introduction of that statement or not. Are you planning to call the inspector at trial? Your Honor, if this case is re-indicted, then... Everybody seems to agree that that's happening, so you're saying that you're going to present the inspector at trial? It's unclear what the trial team will decide as their best strategy when the re-indictment happens. We don't know exactly what the government will plan to present in that additional prosecution. But it's possible, and it certainly would be information if they plan to proceed in that way. There are, of course, a million ways to approach any given trial, but in this case... Would it be favorable to all three counts? Did the district court go count by count? How would the inspector information be relevant to counts two and three? Well, so count one was the fraud scheme count. Counts two and three were wire fraud counts, but they all related to the same FEMA application. I thought that at least two or three related to a rental subsequent to the hurricane. It related to rental assistance that she received because she represented that she had been impacted by Hurricane Harvey. And so FEMA provides different types of awards depending on what damages somebody suffers when they're out of their home. And so that was one of them. And so Your Honor asked how... Just with time running out, do you have a single best case where the material not turned over is a false lead, a dead lead? Can you think of one? Where the material is a dead lead? I'm not sure I understand, but... Well, it's like I think of Roviero. The government has an affirmative duty to give the identity of an informant, but I don't know of a case where the government has to say, here's where a witness you might think would be favorable to you is. Well, in United States v. Cadet, that's a Ninth Circuit case. And you cited it? The government actually cited it. There's a portion of that opinion that talks about the names and identities of witnesses. Okay. That's fine. Thank you. I'll look at that. Okay. Thank you. Thank you. We'll now hear the rebuttal. Your Honors, every piece of information, the recoupment letters, which I didn't really touch on, were not material, were not prejudicial. The defendant did not even use them at trial once she was aware of them, because that's not a defense to fraud, whether you repaid the money or not. Defense counsel was aware days before trial that no repayment efforts had been made. The representation that all Quiro had was the inspector number cannot be true based upon the evidence in the opening statement, the opening statement argument and the cross-examination, because the defense counsel represented to the court and to the jury that this person, this inspector, met personally with Quiro, examined her driver's license, went room by room toward the room. If the court looks at the inspection report, there's even appliances that were damaged. So if she was present, how did she even meet this inspector to have this inspection? There must have been some contact between the two beyond simply an inspector. I may be wildly wrong how FEMA works, but it is post-Katrina, it's post these hurricanes. It's probably like a car accident. You get the adjuster shows up, they assess it really quickly, they're gone. I'm not sure you would necessarily get their information, but I'm not disagreeing that we know she had the FEMA number, which I assume is specific to an individual person. Right. And we also know that the defense counsel said he tried to Google her. I don't understand how that would even be possible, the Google number. He obviously must have asked his client for the name of this inspector. Certainly she would have had the name of this inspector that she met or some type of information on when and where to meet for this inspection. But again, remember that she called FEMA and told FEMA that the property was completely demolished before the alleged inspection that she attended. Judge Ho and I both were asking about supervisory power. Yes. Do you think they do brief it? And of course she is right, we confirm on an alternate ground. I didn't see Zerat or Niles, the cases cited by the district court, cited in the defense. I do not believe that it's been briefed, Your Honor. And I do not believe it is supported on this record. I believe that the court ruled on his supervisory power. He stated it many times on the record. So he did rule. I mean, I guess the critical, most serious thing, just to be respectful of this district judge, is repeatedly he says, I wouldn't have ordered a dismissal if it were just what happened in this trial. Correct. I'm doing it because of two others. Correct. So that triggers collective sanction, that triggers Hastings, which the Supreme Court has denounced, without an independent examination of prejudice on the facts before it. Nova Scotia said there might be a time where there's pervasive and systemic violations that warrant a collective sanction. That's not this case. Let me just briefly, quickly say that the defense bar and prosecutors understand that prosecutors are held to a higher standard. We understand our burdens under discovery. They're very serious. And that is why it is so vital for the district court to perform on the record a fulsome Rule 16 analysis, a fulsome Swenson-Brady analysis in comparing the facts of the case to the analysis. The district court did not do that in this case. It exceeded its supervisory powers by imposing a sanction that was even greater than Rule 16. Here we have two... Again, you don't really want us to get to remedies, because then that's saying there was an error, right? I am happy to... I don't have time to brief the remedies. We had not discussed remedies. I said that if this court found an error, the remedies have to be expressed on the record, and to the extent that the court did that, he ruled in favor on continuance. He ruled in favor on bad faith. So, and it can't just be implied. You're saying he said no bad faith? Correct, absolutely. Did he actually say, I'll give you a continuance if you want it? He said many times throughout the record and cites in our brief that if it hadn't been for these other two cases, the continuance probably would have sufficed. Now here we have the result of this case. Why it's so important is because for future cases. What we have here is two conscientious, unblemished prosecutors who turned over 11,000 pages of documents, who were rebuked for an absolutely baseless violation in front of the jury. So I would respectfully request that the dismissal order be reversed and the case remanded for reinstatement of the indictment. Thank you. All right, thank you both. We will take this case now and decide it, and we're going to move on to the next case.